**Dennis McHUGH, Plaintiff,**

v.

**Robert RUBIN, Secretary of the Department of the Treasury, and The Bureau of Alcohol, Tobacco and Firearms, Defendants.**

**No. 98–CV–5651(TCP).**

United States District Court,
E.D. New York.

April 23, 1999.

Jerold Wolin, Wolin & Wolin, Jericho, NY, for plaintiff.

Zachary W. Carter, United States Attorney for the Eastern District of New York City, by Carolyn Lisa Miller, for defendants.

## *MEMORANDUM AND ORDER*

PLATT, District Judge.

Before the Court is a Motion to Dismiss brought by defendants Robert Rubin ("Rubin"), Secretary of the Department of the Treasury, and the Bureau of Alcohol, Tobacco & Firearms ("ATF") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendants' Motion to Dismiss is denied.

### Background

The underlying facts in this case are not disputed. On August 5, 1994, plaintiff John McHugh was convicted in District Court, Suffolk County of misdemeanor domestic violence offenses, to wit, Assault in the Third Degree and Criminal Contempt, after physically assaulting his wife. Plaintiff was sentenced to three years probation, although this period was terminated early because of plaintiff's exemplary conduct.

At the time of his conviction, plaintiff was employed as a New York State Park Police Officer. On December 20, 1996, plaintiff's employer placed him on "in-pay" status and removed him from active duty because his misdemeanor domestic violence conviction rendered him ineligible to carry a firearm pursuant to the 1996

amendment to the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* Specifically, section 922(g)(9) provides that "[i]t shall be unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition...." 18 U.S.C. § 922(g)(9) (1998).[1]

In response, plaintiff applied for and received a Certificate of Relief from Civil Disabilities from the State of New York on March 20, 1997. This State Certificate entitled plaintiff to relief from "all disabilities and bars to employment, excluding the right to be eligible for public office." Compl. ¶ 13, Ex. A. Notwithstanding this Certificate, plaintiff received notice on April 3, 1997 that the New York State Office of Parks, Recreation and Historic Preservation was seeking to terminate his employment due to his inability to carry a firearm under federal law. On June 2, 1998, the Office formally terminated plaintiff's employment, reasoning that the "Certificate of Relief from Civil Disabilities [issued by the State did] not restore [plaintiff's] ability to possess a firearm." Compl. ¶ 15, Ex. A.

On June 16, 1998, plaintiff filed a petition with defendants Rubin and ATF for relief from federal firearm disabilities pursuant to section 925(c), which provides, in relevant part, that:

> [a] person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, ... or possession of firearms, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the appli-

cant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. *Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial.* The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice....

18 U.S.C. § 925(c) (1998) (emphasis added).

In 1992, Congress enacted the Treasury, Postal Service, and General Government Appropriations Act (the "Appropriations Act"), mandating that "none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c)." Pub.L. No. 102–393, 106 Stat. 1729, 1732 (1992). Since then, Congress has imposed similar funding limitations for each fiscal year. *See* Pub.L. No. 105–61, 111 Stat. 1272, 1277 (1997); Pub.L. No. 104–208, 110 Stat. 3009, 3319 (1996); Pub.L. No. 104–52, 109 Stat. 468, 471 (1995); Pub.L. No. 103–329, 108 Stat. 2382, 2385 (1994); Pub.L. No. 103–123, 107 Stat. 1226, 1228 (1993). Over the last two years, however, Congress has restored funding for the limited purpose of investigating applications for firearms relief submitted by corporations under section § 925(c).

Based on these appropriations restrictions, Christopher Cuyler, Chief of the ATF Firearms Program Division, informed plaintiff that the agency would not review his application for restoration of federal firearms privileges. Specifically, Mr. Cuyler stated that:

> force by a current or former spouse, family member or cohabitant of the victim. *See* 18 U.S.C. § 921(a)(33)(A)(i) & (ii) (1998).

---

1. A "misdemeanor crime of domestic violence" is defined as any misdemeanor under either state or federal law, an element of which is the use or attempted use of physical

[s]ince October 1992 ... ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon applications for relief from Federal firearms disabilities.... As long as this provision is included in ATF's appropriations legislation, ATF cannot act upon applications for restoration of Federal firearms privileges as submitted by individuals.

Compl. Ex. B, at 1. Without such relief, plaintiff remained ineligible to possess, receive or transport firearms under 18 U.S.C. §§ 922(g)(9) and 921(a)(33)(A).

Accordingly, plaintiff commenced the instant action on July 21, 1998, seeking an Order of Mandamus compelling defendants to process and act upon plaintiff's application for relief pursuant to section 925(c).

Defendants now move this Court for an Order dismissing plaintiff's Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### Discussion

### A. Constitutional Challenge to Section 922(g)

In his Memorandum in Opposition to Defendants' Motion to Dismiss, plaintiff seems to question the constitutionality of section 922(g) on grounds that his domestic violence misdemeanor conviction may not serve as a predicate offense for the purposes of that section without violating the Ex Post Facto Clause. Specifically, plaintiff states that "[he] was convicted for the crimes (1994) before the statute penalizing him was enacted." (Pl.'s Br. at 5.)

■ To the extent that plaintiff asserts a violation under the Ex Post Facto Clause, his claim must fail. The Second Circuit has held that "Congress intended statutes prohibiting felons from possessing firearms to reach 'persons convicted of felonies prior to [the effective date of the statute].'" United States v. Brady, 26 F.3d 282, 291 (2d Cir.1994) (quoting United States v. Matassini, 565 F.2d 1297, 1307 (5th Cir.1978)). While the case at bar involves a misdemeanor conviction as opposed to a felony, plaintiff has cited no authority to suggest that the same rule relating to felony convictions should not apply in this instance.

### B. Subject Matter Jurisdiction to Review ATF's Refusal to Consider Plaintiff's Application for Relief from Firearms Disabilities under Section 925(c)

Having found that section 922(g)(9) does not violate the Ex Post Facto Clause, this Court next must determine whether it has jurisdiction to review the ATF's refusal to consider plaintiff's application for relief from federal firearms disabilities. Defendants contend that this Court may not review ATF inaction because section 925(c) confers jurisdiction upon district courts only if the ATF actually *denies* an individual's application. Where, as here, the ATF merely *refuses to consider* an individual's application, the district court may not review the agency's decision. In response, plaintiff asserts that this Court has jurisdiction because the ATF's refusal to consider plaintiff's application for relief from firearms disabilities constitutes a *de facto* denial, which this Court may review pursuant to section 925(c). While this issue is one of first impression in the Second Circuit, several circuits already have addressed this question and are split as to whether subject matter jurisdiction lies with the district courts.

The Ninth Circuit has held that district courts lack jurisdiction to review individuals' claims for relief from firearms disabilities where the ATF has simply refused to consider such applications due to appropriation legislation. *See Burtch v. U.S. Dep't of the Treasury,* 120 F.3d 1087, 1089–90 (9th Cir.1997). Having received four felony convictions, the plaintiff in *Burtch* was prohibited from possessing a firearm pursuant to 18 U.S.C. § 922(g)(1). He sought restoration of his firearms privileges under section 925(c), but the ATF declined to review his application because Congress

eliminated funding for such investigations. Burtch commenced an action in district court, which, in turn, dismissed the case on grounds that it lacked jurisdiction.

On appeal, the Ninth Circuit affirmed, reasoning that the plain language of section 925(c) only permits district courts to review an individual's application where the ATF has "denied" relief. The court concluded that "the word 'denial' means an adverse determination on the merits and does not include a refusal to act." *Id.* at 1090. Accordingly, where there has not been an actual denial of relief by the ATF, district courts do not have jurisdiction to review the matter under section 925(c). *See id.*

In *United States v. McGill,* the Fifth Circuit reached the same conclusion as the Ninth Circuit in *Burtch,* albeit on slightly different grounds. 74 F.3d 64, 67 (5th Cir.1996). *McGill* also involved a person who lost his right to possess a firearm after a felony conviction. In this case, however, the court relied on the legislative history of the Appropriations Act as it related to section 925(c). The court noted that in a report to Senate, the Appropriations Committee explained why it withheld funds for ATF enforcement of section 925(c):

> Under [925(c)], ATF officials are required to determine whether a convicted felon ... can be entrusted with a firearm. After ATF agents spend many hours investigating a particular applicant[,] they must determine whether or not that applicant is still a danger to public safety. This is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made. The Committee believes that the approximately 40 man-years spent annually to investigate and act upon these in-

vestigations and applications would be better utilized to crack down on violent crime. Therefore, the Committee has included language in the bill which prohibits the use of funds for ATF to investigate and act upon applications from relief from Federal firearms disabilities.

*Id.* at 67 (quoting S.REP. No. 353, 102nd Cong., 2d Sess. 77 (1992)).

The Fifth Circuit determined that this language evidenced Congress' intention to suspend relief provided by section 925(c), concluding that "[w]e cannot conceive that Congress intended to transfer the burden and responsibility of investigating the applicant's fitness to possess firearms from the ATF to the federal courts, which do not have the manpower or expertise to investigate or evaluate these applications." *Id.*

More recently, the Tenth Circuit relied on both plain language and legislative intent in holding that the "only role for the judiciary is judicial review of a denial of relief under § 925(c) to restore his firearms privileges." *Owen v. Magaw,* 122 F.3d 1350, 1354 (10th Cir.1997). Citing the Fifth Circuit's decision in *McGill,* the court concluded that "the difficult and subjective task" of determining whether to restore firearms privileges to a person convicted of a crime should not be transferred from the ATF, with all of its expertise and resources, to the district courts, which have neither. *See id.*[2]

By contrast, the Third Circuit has held that district courts have jurisdiction to review ATF inaction in the context of applications under section 925(c). *See Rice v. United States,* 68 F.3d 702 (3d Cir.1995). In *Rice,* the ATF denied the plaintiff's initial application restoration of his firearms privileges. Subsequently, Rice filed a second application under section 925(c)

---

**2.** Several lower courts also have held that they lack jurisdiction to review refusals by the ATF to conduct investigations pursuant to applications submitted by individuals under section 925(c). *See, e.g., Saccacio v. Bureau of Alcohol, Tobacco & Firearms,* No. 98–70

(W.D.Va. Jan. 20, 1998); *Moyer v. Secretary of the Treasury,* 830 F.Supp. 516, 518 (W.D.Mo. 1993) (holding that district courts may exercise judicial review only if the ATF has denied an application for relief after an investigation).

after the Governor of Pennsylvania pardoned his convictions. While the ATF was in the process of conducting a second investigation, Congress enacted the Appropriations Act and withdrew funding necessary to process the plaintiff's application for relief from firearms disabilities. *See id.* at 705–06. Rice filed suit in district court, seeking to compel the ATF to investigate his application under section 925(c). Shortly thereafter, the district court dismissed for lack of jurisdiction.

On appeal, the Third Circuit concluded that Congress' decision to deny the ATF funding to investigate individual applications under section 925(c) did not amount to a withdrawal of jurisdiction for judicial review. Instead, the court adhered to the general rule that Congress may not repeal substantive law through an appropriations statute unless its intention to do so is "clearly stated." *See id.* at 707. The court determined that Congress failed to include a clear statement of legislative intent to either repeal section 925(c) or restrict judicial review thereunder when drafting the Appropriations Act; thus, section 925(c) remained in effect.

The court next considered whether the ATF's refusal to process Rice's application for relief from firearms disabilities constituted a *de facto* denial, thereby triggering a district court's power to review the ATF decision. *See id.* Conceding the general rule that persons are not entitled to judicial review of administrative decisions unless they have exhausted their administrative remedies, the court nonetheless found that exhaustion in this case could be excused. In so holding, the court relied on the wording of section 925(c) as evidence that "Congress did not intend to apply rigidly the doctrine of exhaustion of administrative remedies in this context because it gave the district courts discretion to create or supplement the administrative record when necessary to avoid a miscarriage of justice." *Id.* at 709. Accordingly, the Third Circuit held that district courts may review the ATF's refusal to consider an application under section 925(c) even though the ATF never actually denied federal firearms relief.

Arguably, *Rice* may be said to be distinguishable from the case at bar because there, the ATF was in the midst of processing Rice's second application for relief from firearms disabilities when Congress denied funding for such investigations. In this case, however, plaintiff was convicted of domestic violence misdemeanors almost two years after Congress began restricting ATF funding. Thus, plaintiff McHugh, unlike Rice, committed his crime in the context of the same procedural limitations that exist today.

Subsequent to *Rice,* Congress attempted to discredit the Third Circuit's holding during further deliberations on the appropriations restriction. In the context of the 1996 version of the Appropriations Act, Senator Paul Simon stated as follows:

> In [*Rice* ], the Third Circuit Court of Appeals found that the current funding prohibition does not make clear congressional intent to bar all avenues of relief for convicted felons. By their reasoning, since ATF is unable to consider applications for relief, felons are entitled to ask the courts to review their applications.
>
> This misguided decision could flood the courts with felons seeking the restoration of their gun rights, effectively shifting from ATF to the courts the burden of considering these applications. Instead of wasting taxpayer money and the time of ATF agents, which could be much better spent on important law enforcement efforts ... we would now be wasting court resources and distracting the courts from consideration of serious criminal cases.
>
> Fortunately, another decision by the fifth circuit in [*McGill* ] found that congressional intent to prohibit any Federal relief—either through ATF or the courts—is clear. The fifth circuit concluded that convicted felons are there-

fore not eligible for judicial review of their relief applications.

Given this conflict in the circuit courts, it is important that we once again clarify our original and sustaining intention. The goal of this provision has always been to prohibit convicted felons from getting their guns back—whether through ATF or the courts. It was never our intention to shift the burden to the courts.

142 CONG.REC. S12,164 (Oct. 19, 1996).

 As a statement of original and present "intention" by one United States Senator (out of one hundred), this is all very well. But it also reaffirms the fact that under section 925(c), the Secretary's refusal to entertain any applications for a permit during the past six years because Congress has precluded its use of funds to investigate or act upon such applications is unquestionably a *de facto* denial.

Furthermore, since Senator Simon made these statements, at least one district court has sided with the Third Circuit, and has concluded that district courts have the jurisdiction to review applications for relief from firearms disabilities when the ATF has refused to proceed because of Congressional appropriations. *See United States v. Mullis*, No. 94 Cr. 20297, 1998 WL 957334 (W.D.Tenn. Sept.9, 1998). In accordance with its decision, the court in *Mullis* referred the matter to a magistrate judge to "develop a record, make any factual finding, and make a recommendation to [the court] regarding the relief sought...." *Id.* at *4.

 If Congress wants to preclude all applications by convicted felons and domestic violence misdemeanants, it should so state and not attempt to achieve that result by means that are "indirect" at best. Thus, we agree with the general rule stated by the Third Circuit that Congress may not repeal legislation without a clear statement of legislative intent. Congress' failure to include such a statement in the appropriations legislation mandates that section 925(c) remain in effect.

### Conclusion

Accordingly, for the reasons stated herein, defendants' Motion to Dismiss must be, and the same hereby is, denied, and the matter is referred to the Magistrate Judge to develop a record and make a recommendation regarding the relief sought.

SO ORDERED.