**Dennis McHUGH, Plaintiff–Appellee,**

v.

**Robert RUBIN, Secretary of the Department of the Treasury, and The Bureau of Alcohol, Tobacco and Firearms, Defendants–Appellants.**

**No. 99–6274.**

United States Court of Appeals, Second Circuit.

Argued: May 24, 2000

Decided: July 11, 2000

Jerold Wolin, Wolin & Wolin, Jericho, NY, for Plaintiff–Appellee.

Thomas M. Bondy, Department of Justice, Washington, DC (David W. Ogden, Acting Assistant Attorney General, Washington, DC; Loretta E. Lynch, United States Attorney, and Carolyn Lisa Miller, Assistant United States Attorney, Brooklyn, NY; and Mark B. Stern, Department of Justice, Washington, DC, on the brief; Imelda M. Koett, Associate Chief Counsel,

Bureau of Alcohol, Tobacco and Firearms, Washington, DC, of counsel), for Defendants–Appellants.

Before: CALABRESI and SACK, Circuit Judges, and CEDARBAUM, District Judge.[*]

SACK, Circuit Judge:

This appeal requires us to determine whether recent congressional funding restrictions have effectively suspended the ability of the Bureau of Alcohol, Tobacco and Firearms (the "ATF") and the federal district courts to review applications by individuals for relief from federal firearms disabilities. The plaintiff, a convicted criminal, applied to the ATF for restoration of his federal firearms privileges pursuant to 18 U.S.C. § 925(c). The ATF refused to act upon his application because Congress has enacted for each fiscal year since 1993 an annual appropriations statute barring the ATF from using appropriated funds to act upon applications by individuals for the restoration of federal firearms privileges. The plaintiff brought suit in the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge* ) seeking either an order of mandamus compelling the ATF to act or an adjudication of his application by the district court in the first instance. The defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the ground that the congressional funding limitations have stripped both the ATF and the district courts of the ability to review the plaintiff's application. The district court denied the defendants' motion to dismiss in a memorandum and order dated April 23, 1999. *See McHugh v. Rubin,* 49 F.Supp.2d 105 (E.D.N.Y.1999).

We conclude that there is no basis for issuing an order of mandamus compelling the ATF to act. We also conclude that the district court is without jurisdiction to adjudicate the plaintiff's application for restoration of federal firearms disabilities. Accordingly, we reverse the order of the district court and remand to the district court with instructions for it to grant the defendants' motion to dismiss.

## BACKGROUND

The complaint alleges the following undisputed facts. Plaintiff Dennis McHugh, a former New York State Park Police Officer, was convicted in state court of criminal contempt in the second degree and assault in the third degree in violation of N.Y. Penal Law §§ 215.50 and 120.00, respectively, after he violated an order of protection and struck his wife with his fist. McHugh was sentenced to three years' probation. Because he had been convicted of a "misdemeanor crime of domestic violence," McHugh lost the ability "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). For purposes of § 922(g), a "misdemeanor crime of domestic violence" includes "an offense that—(i) is a misdemeanor under Federal or State law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse." 18 U.S.C. § 921(a)(33)(A). Assault in the third degree is a misdemeanor under New York law, *see* N.Y. Penal Law § 120.00, and it has as an element the causation of "physical injury to another person," *id.* McHugh has not contested that he was convicted of a misdemeanor crime of domestic violence within the meaning of §§ 922(g) and 921(a)(33)(A).

McHugh was suspended and ultimately discharged from his position as a New York State Park Police Officer because of his inability to carry a firearm.

---

[*] The Honorable Miriam Goldman Cedarbaum, of the United States District Court for the Southern District of New York, sitting by designation.

On June 16, 1998, McHugh filed with the ATF an application for relief from federal firearms disabilities pursuant to 18 U.S.C. § 925(c). Section 925(c), as relevant here, provides:

A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Secretary [of the Treasury] for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice.

18 U.S.C. § 925(c). The Secretary of the Treasury has delegated his authority under § 925(c) to the Director of the ATF. *See Owen v. Magaw,* 122 F.3d 1350, 1351 (10th Cir.1997); *Burtch v. United States Dep't of the Treasury,* 120 F.3d 1087, 1089 (9th Cir.1997); 27 C.F.R. §§ 178.11, 178.144.

On July 9, 1998, the ATF sent McHugh's counsel a letter stating:

Since October 1992 ... ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon applications for relief from Federal firearms disabilities. This restriction was retained in Pub.L. No. 105–61, 111 Stat. 1277, containing ATF's appropriations for 1998. As long as this provision is included in ATF's appropriations leg-

islation, ATF cannot act upon applications for restoration of Federal firearms privileges as submitted by individuals.

As a result of the above restrictions, we recommend that you contact our office about obtaining restoration of Federal firearms privileges for your client if and when Congress acts to remove the restriction currently imposed.

The plaintiff responded by filing the instant lawsuit in the United States District Court for the Eastern District of New York seeking either an order of mandamus compelling the ATF to act on his application, or plenary review of his application by the district court. The defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1) and (6), respectively. The defendants argued that an order of mandamus was not appropriate because the ATF is prohibited by law from spending funds to act upon applications such as the plaintiff's. The defendants further argued that the district court did not have subject matter jurisdiction to review the plaintiff's application because the plaintiff did not receive a "denial" from the agency within the meaning of 18 U.S.C. § 925(c). The plaintiff argued in opposition that he was entitled to an order of mandamus notwithstanding the limitation on ATF expenditures, and that he should be excused from the normal exhaustion of remedies requirement because of the ATF's refusal to review his application.

The district court denied the motion to dismiss. It held that § 925(c) "remain[s] in effect," and that the ATF's refusal to entertain the plaintiff's application constituted a "*de facto* denial" within the meaning of § 925(c). *McHugh,* 49 F.Supp.2d at 111. The district court referred the case to a magistrate judge "to develop a record and make a recommendation regarding the relief sought." *Id.* Pursuant to the defendants' request, the district court certified its decision for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and

on October 5, 1999, this Court granted leave to appeal.

## DISCUSSION

### I. Standard of Review

This appeal turns solely on questions of law which we review *de novo*. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (holding that legal issues presented by Rule 12(b)(1) motion are reviewed *de novo*); *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir.1998) (holding that Rule 12(b)(6) disposition is reviewed *de novo*).

### II. Mandamus

■ The plaintiff has argued that he is entitled to a writ of mandamus pursuant to 28 U.S.C. § 1361. Section 1361 provides in full: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." This Court has held that a writ of mandamus may not be granted pursuant to § 1361 unless there is "a plainly defined and peremptory duty on the part of the defendant to do the act in question." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir.1989); *accord City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir.1984) (holding that a writ of mandamus will not issue under § 1361 unless "the defendant is under a clear nondiscretionary duty to perform the act requested"), *aff'd on other grounds sub nom. Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

Here, the ATF is under a statutory duty *not* to do the act in question. For each fiscal year since 1993, Congress has enacted an appropriations statute stating: "[N]one of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. [§ ]925(c)."[1] Even the simple act ·by the ATF of processing· applications in accordance with a straightforward categorical rule (for example, "all applications shall be denied") would involve the use of appropriated funds. The ATF has been placed in a virtual straitjacket by the plain language of Congress's appropriations statutes precluding it from acting on § 925(c) applications.

■ It is well established that Congress may repeal, amend or suspend a statute by means of an appropriations bill, so long as its intention to do so is clear. *See Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) ("Congress ... may amend substantive law in an appropriations statute, as long as it does so clearly."); *United States v. Dickerson*, 310 U.S. 554, 555, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940) ("There can be no doubt that Congress could suspend or repeal the authorization contained in [a statute]; and it could accomplish its purpose by an amendment to an appropriation bill, or otherwise."). "'The whole question depends on the intention of Congress as expressed in the statutes.'" *United States v. Will*, 449 U.S. 200, 222, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) (quoting *United States v. Mitchell*, 109 U.S. 146, 150, 19 Ct.Cl. 703, 3 S.Ct.

1. Treasury and General Government Appropriations Act, 2000, Pub.L. No. 106–58, 113 Stat. 430, 434 (1999); Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub.L. No. 105–277, 112 Stat. 2681, 2681–485 (1998); Treasury and General Government Appropriations Act, 1998, Pub.L. No. 105–61, 111 Stat. 1272, 1277 (1997); Omnibus Consolidated Appropriations Act, 1997, Pub.L. No. 104–208, 110 Stat. 3009, 3009–319 (1996); Treasury, Postal Service, and General Government Appropriations Act, 1996, Pub.L. No. 104–52, 109 Stat. 468, 471 (1995); Treasury, Postal Service and General Government Appropriations Act, 1995, Pub.L. No. 103–329, 108 Stat. 2382, 2385 (1994); Treasury, Postal Service, and General Government Appropriations Act, 1994, Pub.L. No. 103–123, 107 Stat. 1226, 1228 (1993); Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub.L. No. 102–393, 106 Stat. 1729, 1732 (1992).

151, 27 L.Ed. 887 (1883)). While repeals by implication "are not favored," Congress is not required to make an express statement in order to modify an existing statute via subsequent appropriations legislation. *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 189, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (internal quotation marks omitted). A "positive repugnancy" between the existing statute and the appropriations statute is sufficient to indicate the earlier statute's suspension or repeal. *Id.* at 190, 98 S.Ct. 2279 (internal quotation marks omitted); *see also Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (repeal is implied when the earlier and later statutes are "irreconcilable").

Congress could not have stated more clearly that the ATF is prohibited from acting on applications submitted by individuals pursuant to § 925(c). The parties have not suggested that the ATF has access to any funds other than those affected by the relevant spending limitation, nor are we aware of any such funds. Thus,

while the annual appropriations statutes speak in terms of the ATF's ability to spend appropriated funds, their effect on the agency is obvious: It may neither grant nor deny applications falling within the scope of the funding restriction. We therefore conclude that Congress's intent to suspend the ATF's ability to act on applications submitted by individuals pursuant to § 925(c) is "clear and manifest." *Tennessee Valley Auth.,* 437 U.S. at 189, 98 S.Ct. 2279 (internal quotation marks omitted); *see Dickerson,* 310 U.S. at 561, 60 S.Ct. 1034 (holding that Congress suspended operation of statute by restricting use of appropriated funds); *United States v. Wiggins,* 50 F.Supp.2d 512, 515–16 (E.D.Va.1999) (holding that Congress "clearly intended to suspend § 925(c) relief by denial of funding for investigating and processing applications under the statute," and denying writ of mandamus).[2] Since the ATF owes the plaintiff no duty under § 925(c), the plaintiff is not entitled to a writ of mandamus compelling the ATF to act on his application. .

2. We note that the legislative history, which we need not consult in light of the plain meaning of the appropriations statutes, does confirm this reading. The Report which the Senate Committee on Appropriations submitted in connection with the first limitation on § 925(c) expenditures stated:

> After ATF agents spend many hours investigating a particular applicant they must determine whether or not that applicant is still a danger to public safety. This is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made. The Committee believes that the approximately 40 man-years spent annually to investigate and act upon these investigations and applications would be better utilized to crack down on violent crime. Therefore, the Committee has included language in the bill which prohibits the use of funds for ATF to investigate and act upon applications for relief from Federal firearms disabilities. Under current policy, States have authority to make these determinations *and the Committee believes this is properly where the responsibility ought to rest.* The Committee expects ATF to redeploy the positions and funding presently supporting firearms disability relief to the Armed Career Criminal program.

S. Rep. No. 102–353, at 19–20 (1992) (emphasis added). The authority of the States to facilitate restoration of federal firearms privileges is contained in 18 U.S.C. §§ 921(a)(20) and 921(a)(33)(B)(ii) (both providing that federal firearms disabilities shall not be imposed on certain persons who have been pardoned or who have had their civil rights restored, or whose convictions have been expunged or set aside); *see also* 27 C.F.R. § 178.142. The passage from the Senate Report quoted above makes clear Congress's intent to preclude the ATF from acting on § 925(c) petitions. *See also, e.g.,* H.R.Rep. No. 106–231, at 80 (1999) ("The Committee has continued language that . . . prohibits ATF from acting upon applications for relief from Federal firearms disabilities."); H.R.Rep. No. 104–183, at 15 (1995) ("For the fourth consecutive year, the Committee has added bill language prohibiting the use of Federal funds to process applications for relief from Federal firearms disabilities. . . . [T]hose who commit felonies should not be allowed to have their right to own a firearm restored."); S.Rep. No. 103–106, at 20 (1993) ("Under current policy, States have authority to make these determinations and the Committee believes that this is where the responsibility ought to rest.").

## III. District Court Review

█ The federal district courts are no more empowered than is the ATF to review individuals' applications for relief from federal firearms disabilities. Section 925(c) makes an agency "denial" of an application a predicate to district court jurisdiction, and no such denial has been issued here.

█ As a general rule, "we shall find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme.'" *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (quoting *Block v. Community Nutrition Inst.*, 467 U.S. 340, 351, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970))). If a statute does indeed route the initial adjudication of a claim through an administrative agency, a district court is without jurisdiction to hear the claim until administrative review is complete. *See Shalala v. Illinois Council on Long Term Care, Inc.*, —— U.S. ——, 120 S.Ct. 1084, 1089, 146 L.Ed.2d 1 (2000); *Thunder Basin Coal Co.*, 510 U.S. at 202, 207, 218, 114 S.Ct. 771.[3]

Section 925(c) explicitly limits the scope of district court jurisdiction to the "judicial review of [a] denial" by the Secretary of the Treasury of an application for relief. The statutory scheme set forth in Section 925(c) makes it not only "fairly discernible" but abundantly clear that Congress intended to confine the initial adjudication of § 925(c) applications to the Secretary of the Treasury. First, § 925(c) is not written so as to create a freestanding opportunity for relief from federal firearms disabilities which might be vindicated pursuant to 28 U.S.C. §§ 1331 or 1337, which establish original district court jurisdiction over cases involving federal questions and congressional commerce regulations, respectively. Rather, the statute states that a person "may make application to the Secretary" and "the Secretary may grant such relief." 18 U.S.C. § 925(c).

Second, the standard for granting relief is worded so broadly as to connote administrative agency decisionmaking. Section 925(c) states that relief may be granted if "the circumstances regarding the disability, and the applicant's record and reputation, are such that the application will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to public interest." Administrative agencies are far better suited than are courts to make determinations based on the broad policy question of what is in the "public interest."

Third, § 925(c) contains a restriction on the consideration of new evidence by the district courts, stating: "The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." This constraint on the admission of evidence suggests that the initial adjudication of applications is limited to the Secretary of the Treasury.[4] We therefore conclude that Congress in-

---

**3.** We respectfully disagree with the view of the Third Circuit that the scope of judicial review under § 925(c) is an issue "most appropriately analyzed in accord with the doctrine of exhaustion of administrative remedies," rather than a "true issue[] of subject matter jurisdiction." *Rice v. United States, Dep't of Alcohol, Tobacco & Firearms,* 68 F.3d 702, 708 (3d Cir.1995).

**4.** The relevant legislative history indicates that in a case calling for the admission of additional evidence, "the court might in its discretion request the presence of an agent representing the Secretary, and stay the action for a suitable time to permit the Secretary to review his finding in light of the additional evidence," and only "then proceed if that evidence did not alter the Secretary's determination." S.Rep. No. 98–583, at 27 (1984); *see also* S.Rep. No. 97–476, at 24 (1982) (report on predecessor bill containing same recommendation). Congress's cautious attitude toward plenary district court review suggests that § 925(c) does indeed state a limit on district court jurisdiction to consider in the first instance applications for relief from federal firearms disabilities.

tended for district court review to be contingent on an initial consideration of an application by the Secretary. *See Saccacio v. Bureau of Alcohol, Tobacco & Firearms,* 211 F.3d 102, 104 (4th Cir.2000) (holding that "section 925(c) authorizes judicial review of only the denial of an application for relief"); *Owen v. Magaw,* 122 F.3d 1350, 1354 (10th Cir.1997) (holding that "[t]he only role for the judiciary is judicial review of a denial of relief under § 925(c)"); *Burtch v. United States Dep't of the Treasury,* 120 F.3d 1087, 1090 (9th Cir.1997) (holding that there must "first be a denial by ATF for the district court to review"); *United States v. McGill,* 74 F.3d 64, 66 (5th Cir.) (holding that "Congress intended for district courts to review only the Secretary's denial"), *cert. denied,* 519 U.S. 821, 117 S.Ct. 77, 136 L.Ed.2d 35 (1996).

The appropriations statutes enacted for each fiscal year since 1993 do not, by their terms, create district court jurisdiction where § 925(c) does not. Moreover, the legislative history is barren of any indication that it was Congress's intent for the courts newly to assume the burden of adjudicating § 925(c) applications at the very moment the ATF stopped processing those applications. On the contrary, the legislative history indicates a pronounced skepticism about the ability of any adjudicative body to perform the task adequately and a desire to suspend the ability of individuals to have their firearms privileges restored. *See, e.g.,* H.R.Rep. No. 104–183, at 15 ("[T]hose who commit felonies should not be allowed to have their right to own a firearm restored."); S.Rep. No. 102–353, at 19 (describing the adjudication of § 925(c) applications as "a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made"). In sum, we are aware of no basis for expanding district court jurisdiction beyond the limits set forth in § 925(c).[5] The sole, dispositive

question, then, is whether the ATF "denied" McHugh's petition.

The district court held that "the Secretary's refusal to entertain any applications for a permit during the past six years because Congress has precluded its use of funds to investigate or act upon such applications is unquestionably a *de facto* denial." *McHugh,* 49 F.Supp.2d at 111. The district court is not alone in holding this view. *See Bean v. United States,* 89 F.Supp.2d 828, 837 (E.D.Tex.2000) ("[T]his Court holds that inaction by the ATF constitutes a defacto denial of an application such that a United States district court may consider a petition for judicial review of the denial."); *cf. Rice v. United States, Dep't of Alcohol, Tobacco & Firearms,* 68 F.3d 702, 709 (3d Cir.1995) (holding that persons seeking restoration of federal firearms privileges "need not exhaust administrative remedies to invoke the judicial review provision of section 925(c)"); *Environmental Defense Fund, Inc. v. Hardin,* 428 F.2d 1093, 1099 (D.C.Cir.1970) ("[W]hen administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief.").

■ We are nonetheless persuaded by the contrary view that the word "denial" connotes more than a mere refusal to act. *See Saccacio,* 211 F.3d at 104 ("It may be that [the plaintiff] has not been afforded the ultimate relief for which he applied, but it is simply not the case that his application for relief has been denied by the agency."); *Owen,* 122 F.3d at 1354 (holding that ATF's refusal to act on application did not constitute "denial"); *Burtch,* 120 F.3d at 1090 ("In the context of the entire statute, the word 'denial' ... does not include a refusal to act."); *Dreher v. United States,* 943 F.Supp. 680, 684 (W.D.La.1996)

---

**5.** To the extent the annual appropriations statutes passed by Congress remove a necessary predicate to district court jurisdiction, they are "irreconcilable" with, and imply the

suspension of, that portion of § 925(c) which authorizes judicial review. *Tennessee Valley Auth.,* 437 U.S. at 190, 98 S.Ct. 2279 (quoting *Mancari,* 417 U.S. at 550, 94 S.Ct. 2474).

("[T]he ATF no longer denies relief from firearms disabilities. Rather, the ATF is simply not authorized to act in any way regarding applications for the restoration of gun privileges."), *aff'd on other grounds sub nom. Dreher v. United States ex rel. United States Bureau of Alcohol, Tobacco & Firearms*, 115 F.3d 330 (5th Cir.1997); *Moyer v. Secretary of the Treasury*, 830 F.Supp. 516, 518 (W.D.Mo.1993) ("The Court disagrees that the letter from ATF acted as a denial of plaintiff's application for relief.... In its letter, ATF merely explains that it is unable under the present law to review any applications for relief."). The ATF is forbidden by statute from denying the plaintiff's application. In compliance with Congress's decree, the ATF has not issued a decision on the plaintiff's application, whether to grant it or to deny it. As the ATF indicated to the plaintiff in its letter of July 9, 1998, it might be capable of issuing such a decision in the future if Congress lifts the restriction on ATF funding, but in the meantime, it "cannot act" upon applications such as that submitted by the plaintiff. When an administrative agency simply refuses to act upon an application, the proper remedy—if any—is an order compelling agency action, not plenary review of the application by a district court. *See* 5 U.S.C. § 706(1); 28 U.S.C. § 1361; *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C.Cir.1984) (holding that 28 U.S.C. § 1651 may be used to compel agency action unreasonably delayed).

■ Even were we to consider the ATF's refusal to act on the plaintiff's application a *"de facto* denial" of that application, however, we would still be unable to conclude that the plaintiff is entitled to relief in the district court. As a general

rule, the denial of a § 925(c) application by the ATF would be subject to reversal only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Bagdonas v. Department of Treasury,* 93 F.3d 422, 425 (7th Cir.1996); *McGill*, 74 F.3d at 66; *Bradley v. Bureau of Alcohol, Tobacco & Firearms*, 736 F.2d 1238, 1240 (8th Cir. 1984). The ATF's decision to comply with a congressional directive cannot be said to meet this standard. We are aware of no alchemy capable of transforming review of the ATF's decision under § 706 into the relief the plaintiff seeks—plenary adjudication of his application by the district court.[6]

## CONCLUSION

For the foregoing reasons, we reverse the order of the district court and remand to the district court with instructions for it to grant the defendants' motion to dismiss.

6. In *Rice,* the Third Circuit held that plenary review in the district courts is triggered whenever a refusal to admit evidence in support of the plaintiff's application would result in a miscarriage of justice. *See* 68 F.3d at 709–10. The Third Circuit relied on the statement in § 925(c) that "[t]he court may in its discretion admit additional evidence where

failure to do so would result in a miscarriage of justice." *See id.* at 709. This statement does not, however, alter the ultimate focus of judicial review: the ATF's decision, which, if consistent with legislative command, cannot be considered "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).