**AHEPA 91, INC., Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; Order of AHEPA National Housing Corporation; AHEPA Management Company, Inc., Defendants–Appellees.**

No. 02–6060

United States Court of Appeals, Second Circuit.

Aug. 21, 2002.

---

Peter A. Vinolus, Law Offices of Peter A. Vinolus, Lackawanna, NY, for Appellant.

Michael A. Battle, United States Attorney, Western District of New York (Jane B. Wolfe, of counsel); Laurence E. Pappas, Pappas and Pappas, Rochester, NY, for Appellees.

Present CALABRESI, POOLER, and SACK, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.

## I. FACTS AND PROCEDURAL HISTORY

This action centers around a $3.5 million advance payment by the United States Department of Housing and Urban Development for the construction of low-income housing for the elderly in Buffalo, New York. The funds are currently in a reserve account of the American Hellenic Educational Progressive Association National Housing Corporation ("ANHC"). ANHC was formed by a national, charitable non-profit, the American Hellenic Educational Progressive Association ("AHEPA"), to enable local AHEPA members to obtain federal funding for the provision of supportive housing for the elderly and handicapped. It applies for HUD funding under section 202 of the Housing Act of 1959, 12 U.S.C. § 1701q, and, once the application process is complete, transfers the funds to the local AHEPA non-profit corporation formed to conduct the project. The case involves a dispute between a local AHEPA corporation, AHEPA 91, Inc., and ANHC.

Section 202 authorizes HUD to make capital advances that bear no interest and do not require repayment "so long as the housing remains available for very low-income elderly" and is maintained in accordance with the statute and regulations. 12 U.S.C. § 1701q (c)(1). HUD has restricted application for these funds to "Sponsors," which, according to the HUD Handbook, must be nonprofits, independent of a public body, and must not allow earnings or funds to benefit individuals. *See* HUD Handbook 4571.3 REV–1, *Section 202 Supportive Housing for the Elderly* 1–2 (1993) ("*Handbook*"). HUD regulations indicate that Sponsors must also be approved by the HUD Secretary "as to administrative

and financial capacity and responsibility." 24 § CFR 891.205. "Owners" are non-profit corporations formed by the Sponsor for the purpose of receiving the advance funds and operating the housing project. *Id.* They must satisfy virtually the same criteria as Sponsors. A Sponsor may only transfer the advance funds to the Owner it has formed. 24 § CFR 891.100(c).[1]

In the language of the HUD regulations, ANHC is the "Sponsor" of the project in dispute, and AHEPA 91 is the putative "Owner." ANHC, however, does not recognize AHEPA 91 as a proper "Owner," objecting to some of AHEPA 91's directors, to its nonconforming Certificate of Incorporation, and to the alleged actions of its President without authorization. As a result, ANHC has asserted that it has lost confidence in AHEPA 91's ability to serve as the project's Owner. And, shortly after a letter from HUD indicating that it was preparing to transfer the funds to AHEPA 91, ANHC advised HUD, by letter dated January 20 1998, that it had not "formed an owner corporation in accordance with the applicable HUD rules and regulations." HUD responded, saying it was "very concerned" since this was the first notice HUD had received after nearly four years of work on this project that AHEPA 91 did not represent the Sponsor. It also stated that it was suspending the transfer. ANHC replied that it had not approved AHEPA 91's board of directors and that AHEPA 91 was therefore not properly incorporated.

A month after HUD's letter announcing that it was suspending the transfer, AHEPA 91 brought suit in federal court seeking a) a writ of mandamus to compel HUD

---

1. The HUD Handbook and Regulations are not a model of clarity in their description of the process by which the funds are transferred. It appears that HUD controls the transfer itself in spite of the language of 24 CFR § 891.100. *See Handbook*, p. 3–55.

to transfer the disputed funds from ANHC to AHEPA 91 and b) damages in tort from ANHC and AHEPA Management Corporation.[2] Specifically, AHEPA 91 charged ANHC with tortious interference with contract and business relations and ANHC and AMC with conspiracy to "usurp the power of [ ] AHEPA 91 for their control and financial benefit all to the detriment of [AHEPA 91]." As recommended by Magistrate Judge Foschio, the district court, on July 30, 1999, granted summary judgment in favor of HUD. Summary judgment was granted by the court in favor of the remaining defendants on February 18, 2002 after a Report and Recommendation by the same Magistrate Judge.

## II. Discussion

We review a district court's grant of summary judgment de novo, drawing all factual inferences and resolving all ambiguities in favor of the nonmoving party. *See McCarthy v. Am. Int'l Group, Inc.,* 283 F.3d 121, 123–24 (2d Cir.2002). Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of any genuine factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quo-

tation marks and citations omitted) (emphasis in original).

### 1. Mandamus

■ AHEPA 91 seeks to compel HUD to transfer the fund reservation to AHEPA 91 over the objections of both ANHC and HUD itself. It invokes 28 U.S.C. § 1361, which states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

A plaintiff asking for a writ of mandamus bears a heavy burden. "The prerequisites for issuance of a writ of mandamus are peremptory: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989) (where agency retained discretion to determine whether a charge was "inherently reasonable" mandamus did not lie); *see also McHugh v. Rubin,* 220 F.3d 53, 57 (2d Cir.2000) (writ may not issue because agency was not only under no duty to perform act requested but was under a duty not to perform the act). We have, moreover, held that the defendant must be under "a clear nondiscretionary duty to perform the act requested." *New York v. Heckler,* 742 F.2d 729, 739 (2d Cir.1984), *aff'd on other grounds sub nom. Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

In the instant case, the district court found mandamus to be inappropriate, because none of the three conditions were

2. AHEPA Management Corporation ("AMC") is a nonprofit corporation established by AHEPA to manage projects sponsored by ANHC.

met. We need only consider one of them to affirm that court.

AHEPA 91 offers no valid argument that HUD has a nondiscretionary duty to transfer the funds. Appellant points us to no statute, regulation, or even handbook section or guidance document that states that HUD is ever *obligated* to transfer funds to a putative Owner, much less when such transfer would be over the objections of the Sponsor. Our own reading of the various legislative and administrative materials, including specifically those pointed to by AHEPA 91, similarly leads us to conclude that HUD has no clear duty to transfer the reserve funds in this case.

Because AHEPA 91 has failed to show a clear nondiscretionary duty on the part of HUD to transfer the fund reservation, the district court was correct to grant summary judgment in favor of HUD.

### 2. Tort Claims

AHEPA 91 appears to be primarily concerned with obtaining the HUD advance payment. Nevertheless, in addition to its mandamus suit, it also alleges two counts of tortious interference.[3] In particular, it has charged that ANHC tortiously interfered with AHEPA 91's option contract with a third party landowner to purchase property for the project and with "its right to carry on a lawful business." Neither claim has merit.

■ In New York, a plaintiff alleging tortious interference with contract is required to prove: "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1375 (1996). AHEPA 91 has failed to meet these requirements.

It suffices to note that there is no evidence in the record, nor even an allegation by AHEPA 91, that the third party landowner breached the contract it had with AHEPA 91. The district court properly found that AHEPA 91 did not exercise its option to purchase the property within the time specified in the contract. Whether or not AHEPA 91's failure to exercise its option was due to the conduct of the defendants (and even if those defendants actually did try to procure the landowner's breach), since there was no breach of the option contract, no suit for tortious interference with a contract can lie. *See Lama Holding Co.*, 646 N.Y.S.2d 76, 668 N.E.2d at 1376; *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group*, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492, 496 (N.Y. 1996) (refusing to recognize a tortious interference with contract claim without evidence of breach).

AHEPA 91's next claim—as stated in its Amended Complaint—is that "[t]he Defendant [ANHC] has tortiously interfered with Plaintiff and its right to carry on a lawful business. This interference is interference in a property right, was committed without cause or an excuse, and should be enjoined." The Amended Complaint goes

---

3. AHEPA 91 itself characterizes these claims as incidental to its main objective, mandamus ordering HUD to transfer the funds. "It is our position that the [grant of summary judgment to HUD], substantially, if not totally, dismissed the complaint of the plaintiff and that this action for mandamus was to recover the grant money and incidentally seek damages, if the grant was not forthcoming, from the other defendants for their interference, etc." Letter from Mr. Vinolus (AHEPA 91's counsel) to U.S. Attorney (January 7, 2000).

on to allege that ANHC foisted an obstinate architect and its own board members upon AHEPA 91 and waged a battle to take AHEPA 91 over completely. The magistrate judge construed this claim as one of tortious interference with business relations. On appeal, AHEPA 91 does not dispute this characterization of its claim.

We have identified the elements, under New York law, of tortious interference with business relations as: (1) the existence of a business relationship with a third party; (2) the interference with those relations by the defendant; (3) a sole purpose of the defendant to harm the plaintiff or the use of dishonest, unfair, or improper means; and (4) injury to the business relationship. *Nadel v. Play–by–Play Toys & Novelties, Inc.,* 208 F.3d 368, 382 (2d Cir. 2000).

The district court found that "ANHC withheld the $3.5 million reservation fund not because it intended to harm AHEPA 91 or to jeopardize the § 202 Housing Project but, rather, because AHEPA 91 failed to comply with HUD regulations that would have established AHEPA 91 as the Owner of the Project and, accordingly, eligible to receive the funds." And, hence, the court concluded that tortious interference with a business relationship was not established. There is no evidence introduced raising a genuine fact question as to this finding.

▆ In any event, we need not go even that far to reach the conclusion that the tortious interference claim does not lie. For it is enough to doom the action that

ANHC's efforts to withhold transfer of the reservation fund and ANHC's other alleged interferences occurred because it *believed* that AHEPA 91 had failed to comply with HUD regulations affecting AHEPA 91's eligibility to receive the funds. No facts have been adduced to the contrary.

HUD's Handbook states that the articles of incorporation of the Owner Corporation "should be consistent with" the model Certificate of Incorporation that HUD provides in the Handbook's Appendix. *Handbook,* ¶ 3–66(B)(2). This certificate reads in part:

> The directors of the Corporation shall, *at all times,* be limited to individuals who are either members of [the Sponsor] or nonmembers who have the approval of the Board of Trustees (Directors) of the said sponsoring organization. In the event that a director of the Corporation ceases to be a member of [the Sponsor] or, if the aforesaid approval is withdrawn, then, in either event, such shall constitute automatic resignation as a director (trustee) of the Corporation.

*Handbook,* App. 14 (emphasis added).

AHEPA 91's Certificate of Incorporation, submitted to the State of New York on October 20, 1995, did not comply with these requirements. It substituted instead, "AHEPA William McKinley Chapter No. 91" in place of "ANHC" in the first spot where the name of the Sponsor should go and left nothing in the second spot.[4]

---

4. AHEPA William McKinley Chapter No. 91 is the local chapter of the national AHEPA organization. It is not affiliated with AHEPA 91, except in the fact that the latter was formed because of the interest of members of the local AHEPA chapter in providing housing for low-income elderly. With the alteration the Certificate becomes ambiguous if not meaningless.

Whether or not AHEPA 91's Certificate of Incorporation could or should have been approved by HUD is beside the point. ANHC acted consistently with the reasonable belief that it needed authority over AHEPA 91's board member selection to obtain HUD funding. And it repeatedly expressed its desire to reconstitute the board to comply with this view of the HUD regulations. Moreover, AHEPA 91 points to nothing to rebut this evidence or to support a finding that ANHC acted with improper or wrongful means or with a sole purpose to injure AHEPA 91.[5]

We conclude that summary judgment for ANHC was correctly granted on the tortious interference claims.[6]

We have considered all of the plaintiff's arguments and find them meritless. We therefore AFFIRM the Orders of the District Court.

---

**5.** The record discloses a letter to the landowner from his attorney and two letters sent by ANHC to the Buffalo HUD office. These letters however are only evidence that ANHC believed that AHEPA 91 had not complied with HUD regulations. They are not indicators whatsoever that ANHC acted with a sole purpose to injure AHEPA 91 or used wrongful means.

**6.** The district court also correctly granted summary judgment for defendants ANHC and AMC on AHEPA 91's civil conspiracy allegation. New York has not recognized conspiracy to commit a tort as a tort itself. *See Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968, 510 N.Y.S.2d 546, 503 N.E.2d 102, 102–03 (1986).