277 F.3d 138 (2nd Cir. 2002)
 AUBURN HOUSING AUTHORITY, NEW YORK CITY HOUSING AUTHORITY, AND PLATTSBURGH HOUSING AUTHORITY, PLAINTIFFS-APPELLEES,
v.
MEL MARTINEZ, AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, AND UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, DEFENDANTS-APPELLANTS,
 Docket No. 01-6086
 UNITED STATES COURT OF APPEALS For the Second Circuit
 Argued: October 29, 2001
Decided January 7, 2002
 
 1
 Defendants appeal from a final judgment of the United States District Court for the Southern District of New York (William H. Pauley, III, J.) granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment. The district court ordered the Secretary to comply with his obligations under section 519(n) of the Quality Housing and Work Responsibility Act of 1998, Pub. L. No. 105- 276, tit. V, 112 Stat. 2461, 2518-2670 (1998) (codified at 42 U.S.C. § 1437g(n) (Supp. 1998)).
 
 
 2
 Affirmed.[Copyrighted Material Omitted]
 
 
 3
 Elizabeth Wolstein, Assistant United States Attorney, Southern District of New York (Mary Jo White, United States Attorney, Southern District of New York, Sara L. Shudofsky and Gideon A. Schor, Assistant United States Attorneys, Southern District of New York, of counsel, on the brief) for Defendants-Appellants.
 
 
 4
 Henry Schoenfeld, New York City Housing Authority, New York, New York (Ricardo Elias Morales, General Counsel, and Nancy M. Harnett, of counsel, New York City Housing Authority, New York, New York, on the brief) for Plaintiff-Appellee New York City Housing Authority.
 
 
 5
 Ross Tisci, Boyle & Anderson, P.C., Auburn, New York, for Plaintiff-Appellee Auburn Housing Authority.
 
 
 6
 Lori Cantwell, Law Office of Rich & Lori Cantwell, Plattsburgh, New York, for Plaintiff-Appellee Plattsburgh Housing Authority.
 
 
 7
 Before: Pooler and Katzmann, Circuit Judges, and Hurd, District Judge.*
 
 Katzmann, Circuit Judge
 Introduction
 
 8
 The Defendants, Mel Martinez, Secretary of the United States Department of Housing and Urban Development, and the United States Department of Housing and Urban Development (collectively "HUD"), appeal from a decision of the District Court for the Southern District of New York (William H. Pauley, III, J.) denying their motion for summary judgment and granting the plaintiffs' motion for summary judgment. The plaintiffs, Auburn Housing Authority, New York City Housing Authority, and Plattsburgh Housing Authority (collectively "the Housing Authorities"), brought this lawsuit to enforce section 519(n) of the Quality Housing and Work Responsibility Act of 1998, Pub. L. No. 105- 276, tit. V, 112 Stat. 2461, 2518-2670 (1998) (codified at 42 U.S.C. § 1437g(n) (Supp. 1998)) ("QHWRA"), which the plaintiffs argue requires HUD to provide funding to approximately 7000 of the plaintiffs' public housing units. HUD contends that section 226 of the 1999 Veteran Affairs and HUD Appropriations Act, Pub. L. No. 105-276, 112 Stat. 2461, 2490 (1998) ("the 1999 Appropriations Act"), permanently bars HUD from implementing section 519(n) of QHWRA, which was also enacted in the 1999 Appropriations Act. The district court rejected HUD's position and ordered the Secretary to comply with section 519(n). For the reasons stated below, we affirm the district court's decision.
 
 Background
 
 9
 This case arises from a disagreement as to the interpretation of two provisions in the 1999 Appropriations Act that, on the surface, appear to conflict. In order to evaluate properly the parties' arguments on appeal, it is helpful first to discuss the federal public housing program and to set out the statutory provisions at issue in this case.
 
 The Federal Public Housing Program
 
 10
 Pursuant to the United States Housing Act of 1937, 42 U.S.C. § 1437 et. seq. ("the Housing Act"), HUD provides financial assistance to public housing throughout the country primarily through two types of annual grants to public housing agencies -- an Operating Fund and a Capital Fund. An Operating Fund grant provides funding for the routine expenses of operating and managing public housing developments, while a Capital Fund grant provides funds for capital improvements to those developments and for related expenses. Congress appropriates amounts for the Operating Fund and the Capital Fund annually. HUD, in turn, allocates these funds to the public housing agencies through an Operating Fund formula and a Capital Fund formula. The public housing agencies receive their annual allocations of operating and capital funds based on agreements with HUD that are amended annually. Prior to the passage of QHWRA in 1998, federal funds could only be used to support housing units developed through the federal public housing program, with some very limited exceptions.
 
 The Two Statutory Provisions At Issue
 
 11
 QHWRA was enacted on October 21, 1998 as part of the 1999 Appropriations Act. See 112 Stat. at 2518-2670. QHWRA amends Section 9 of the Housing Act by, among other things, making certain public housing units developed pursuant to state law eligible for federal assistance. Id. at 2551, 2559-60. Specifically, section 519(n) of QHWRA provides that for purposes of determining allocations under the Operating Fund and Capital Fund formulas, HUD is to deem certain state-aided housing units in New York and Massachusetts to be federal public housing and to provide assistance for those units. Id. at 2559-60. As to New York, section 519(n) states in relevant part:
 
 
 12
 [T]he Secretary shall deem any covered locally developed public housing units as public housing units developed under this title and such units shall be eligible for such assistance....
 
 
 13
 For purposes of this paragraph, the term "covered locally developed housing units" means... not more than 7,000 public housing units developed pursuant to laws of the state of New York and that received debt service and operating subsidies pursuant to such laws....
 
 
 14
 Id. at 2560.
 
 
 15
 The 1999 Appropriations Act also included administrative provisions, such as section 226, which stated:
 
 
 16
 Notwithstanding any other provision of law, no funds in this Act or any other Act may hereafter be used by the Secretary of Housing and Urban Development to determine allocations or provide assistance for operating subsidies or modernization of certain State and city funded and locally developed public housing units, as defined for purposes of a statutory paragraph, notwithstanding the deeming by statute of such units to be public housing units developed under the United States Housing Act of 1937, unless such unit was so assisted before October 1, 1998.
 
 
 17
 Id. at 2490.
 
 
 18
 The Housing Authorities' Requests for Funding under § 519(n) of QHWRA
 
 
 19
 In the Spring of 2000, the Housing Authorities filed applications with HUD's regional offices, requesting that HUD deem certain locally developed public housing units to be covered units so they could qualify for funding under section 519(n). The plaintiffs were informed that a determination regarding the requests would have to be obtained from HUD's Washington, D.C. office. To date, HUD has failed to provide the requested funding to the Housing Authorities based on its understanding that section 226 permanently bars the agency from doing so.
 
 
 20
 On June 18, 2000, New York Representative Rick Lazio, Chairman of the House of Representatives Subcommittee on Housing and Community Opportunity of the Committee on Banking and Financial Services and principal author of QHWRA, wrote then-HUD Secretary Andrew Cuomo regarding the Housing Authorities' requests for funding. Congressman Lazio explained that although the 1999 Appropriations Act prohibited HUD from implementing section 519(n) for fiscal year 1999, the 2000 Appropriations Act did not contain any such restriction. On June 30, 2000, several Members of Congress wrote Secretary Cuomo, requesting that the approximately 7000 units of state-assisted public housing in Plattsburgh, Auburn, and New York City be transferred into the federal housing program pursuant to section 519(n) of QHWRA. The Members expressed their view that section 226 only limited the Secretary's ability to expend certain funds and that sections 226 and 519(n) should be read together to give effect to both provisions.
 
 
 21
 On August 9, 2000, before the instant litigation began, Harold Lucas, HUD Assistant Secretary for Public and Indian Housing, wrote to the Chairmen and Ranking Minority Members of the House and Senate Appropriations Subcommittees on Veterans Affairs, HUD, and Independent Agencies, informing them of the Housing Authorities' requests. Assistant Secretary Lucas noted that "[w]e have received letters from Members of Congress expressing the view that the intent of section 226 was not to permanently foreclose funding. Therefore, we will act in accordance with the mandate of section 519 and fund those units." Lucas asked that the Members inform him if this was not Congress's intent. Senator Christopher Bond, Chairman of the Senate Subcommittee on Veterans Affairs, HUD, and Independent Agencies of the Committee on Appropriations, responded to Lucas's letter. He expressed his view that section 226 "overrides section 519(n) of the VA/HUD FY 1999 Appropriations Act and prohibits the `federalization' of these and other state assisted public housing units through funding under the Public Housing Capital Fund and the Public Housing Operating Fund." According to Senator Bond, section 226 applied to fiscal year 1999 and to each fiscal year thereafter. Senator Bond based his interpretation of section 226 on language in that provision stating "no funds in this Act or any other Act may hereafter be used."Procedural History
 
 
 22
 On August 28, 2000, the Housing Authorities filed the instant lawsuit in the United States District Court for the Southern District of New York, alleging that HUD violated section 519(n) of QHWRA by failing to provide the requested funding for 6983 state and locally developed public housing units in fiscal year 2000. On September 18, 2000, the parties filed cross-motions for summary judgment. The district court granted the Housing Authorities' motion for summary judgment on December 7, 2000 and ordered HUD to comply with section 519(n) of QHWRA.
 
 
 23
 In a thorough and well-reasoned opinion, the district court found that section 226 lacked the requisite unambiguous language of permanence necessary to overcome the presumption that an appropriation provision applies only to the fiscal year in which it is enacted unless its language clearly and expressly indicates that it is intended to be permanent. The district court determined that the word "hereafter" in section 226 did not indicate that Congress intended to permanently prohibit HUD from distributing funds under Section 519(n); rather, the court concluded that "hereafter" limits the Secretary's ability to expend funds appropriated in the 1999 Appropriations Act or any other appropriation act for the same fiscal year. The court noted that Congress used clear language in section 519(n) to make it permanent legislation--"[t]his subsection shall apply to fiscal year 1999 and each fiscal year thereafter"--and thus could have been as clear in section 226 if it had intended 226 to be permanent. The district court also reasoned that the defendants' interpretation of section 226 would prevent HUD from ever allocating funds to the 7000 additional units section 519(n) intended to fund, thereby nullifying section 519(n). The district court noted as well that the legislative history of section 226 supported the plaintiffs' interpretation of section 226.
 
 Standard of Review
 
 24
 We review de novo a district court's grant of a summary judgment. See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999). Summary judgment is properly granted only when "there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Questions of statutory interpretation are reviewed de novo. See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107 (2d Cir. 2001); Perry v. Dowling, 95 F.3d 231, 235 (2d Cir. 1996).
 
 Discussion
 
 25
 In this case, we are called upon to determine whether Congress intended section 226 of the 1999 Appropriations Act to nullify section 519(n) of the same act, as the defendants argue, or whether section 226 only prohibited the implementation of section 519(n) with fiscal year 1999 funds, as the plaintiffs argue and the district court found. In interpreting the terms of a statute, we look first to the language of the statute itself. See Mallard v. United States Dist. Court, 490 U.S. 296, 300 (1989); In re Boodrow, 126 F.3d 43, 49 (2d Cir. 1997), cert. denied, 522 U.S. 1117 (1998). "`But the text is only the starting point,'... especially when the language is ambiguous." Id. at 49 (quoting Kelly v. Robinson, 479 U.S. 36, 43 (1986)). If the meaning of the statute is ambiguous, the court may resort to canons of statutory interpretation to help resolve the ambiguity. See United States v. Dauray, 215 F.3d 257, 262 (2d Cir. 2000). The court may also look at legislative history to determine the intent of Congress. See Barnhill v. Johnson, 503 U.S. 393, 401 (1992) (appeals to legislative history will be taken only to resolve statutory ambiguity); Dauray, 215 F.3d at 264 ("When the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history."); see also 1 United States General Accounting Office, Principles of Federal Appropriations Law 2-64 (2d ed. 1991) (hereinafter "GAO Principles").
 
 
 26
 "Statutory construction... is a holistic endeavor." United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 371 (1988). See generally William N. Eskridge, Jr. & Philip P. Frickey, Cases and Materials on Legislation: Statutes and the Creation of Public Policy 643-52 (2d ed. 1995). The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute. See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); Kmart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").
 
 
 27
 The meaning of section 226 is not patently clear when it is read together with section 519(n) of the same act. The relevant portion of section 226 states:
 
 
 28
 Notwithstanding any other provision of law, no funds in this Act or any other Act may hereafter be used by the Secretary of Housing and Urban Development to determine allocations or provide assistance for operating subsidies or modernization for certain State and city funded and locally developed public housing units....
 
 
 29
 112 Stat. at 2490. Section 519(n) makes up to 7000 state and local public housing units in New York eligible for assistance from HUD under the Federal Housing Program. Id. at 2560. Section 519(n)(4) explicitly states that "[t]his subsection shall apply to fiscal year 1999 and each fiscal year thereafter." Id. While the parties agree that section 226 prohibits HUD from using fiscal year 1999 monies to implement 519(n), the parties disagree as to the duration of the prohibition imposed by section 226. HUD argues that section 226 is a permanent bar to funding, while the Housing Authorities contend that Congress intended section 226 only to apply to funds appropriated in fiscal year 1999.
 
 Applying Canons of Statutory Construction
 
 30
 To resolve the ambiguity of section 226, we turn to canons of statutory construction. We begin with the important principle that repeals by implication are not favored. See Tennessee Valley Auth. v. Hill, 437 U.S. 153, 189 (1978); Morton v. Mancari, 417 U.S. 535, 549 (1974). This is especially true when the provision advanced as the repealing measure -- here section 226 -- was enacted in an appropriations bill. See United States v. Will, 449 U.S. 200, 221-22 (1980); Tennessee Valley Auth., 437 U.S. at 190; Calloway v. District of Columbia, 216 F.3d 1, 9-10 (D.C. Cir. 2000).
 
 
 31
 While Congress may amend or repeal a statute by means of an appropriations bill, its intention to do so must be clear. See Robertson v. Seattle Audubon Soc'y, 503 U.S. 429, 440 (1992) ("Congress... may amend substantive law in an appropriations statute, as long as it does so clearly."); Tennessee Valley Auth., 437 U.S. at 189 (stating that "the intention of the legislature to repeal must be `clear and manifest'") (quoting Posadas v. National City Bank, 296 U.S. 497, 503 (1936)); McHugh v. Rubin, 220 F.3d 53, 57 (2d Cir. 2000) (stating that Congress may repeal, amend, or suspend a statute by means of an appropriations bill, so long as its intention is clear). Absent an affirmative showing of an intention to repeal, "`the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.'" Tennessee Valley Auth., 437 U.S. at 190 (quoting Morton, 417 U.S. at 550); McHugh, 220 F.3d at 58 (noting that a "positive repugnancy" between the existing statute and the appropriations statute is sufficient to indicate repeal of the earlier statute).
 
 
 32
 The "cardinal rule" that repeal by implication is disfavored, see Tennessee Valley Auth., 437 U.S. at 189; Posadas, 296 U.S. at 503, is even stronger when the two acts were enacted close in time, see Morf v. Bingaman, 298 U.S. 407, 414 (1936) (holding that "[r]epeal by implication is not favored, especially where the one act follows close upon the other, at the same session of the Legislature"). The Comptroller General relied on Morf in an opinion letter in which he concluded that when two acts were under consideration and enacted on the same day, one could not conclude that Congress intended the later-passed statute to govern and therefore nullify the earlier statute. See 67 Comp. Gen. 332 (1988). As the Comptroller General explained, "[s]uch proximity in time of enactment is forceful evidence that Congress intended the two statutes to stand together." Id. at 335; see also GAO Principles at 2-51 (explaining that when two statutes are enacted on the same day, the presumption that Congress intends both statutes to stand together is even stronger and the approach is to make every effort to reconcile the statutes so as to give maximum effect to both).
 
 
 33
 In the instant case, not only were sections 226 and 519(n) enacted on the same day, but they were enacted as part of the same legislation. Thus, absent a clear indication of Congressional intent to the contrary, it is the court's duty to reconcile these provisions, if possible, so that both will have meaning. See United States v. Menasche, 348 U.S. 528, 538 (1955) (stating that "`[t]he cardinal principle of statutory construction is to save and not to destroy'") (quoting National Labor Relations Bd. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30 (1937)); Morton, 417 U.S. at 551 ("[t]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."); Connecticut v. United States Dep't of the Interior, 228 F.3d 82, 88 (2d Cir. 2000) (explaining that the court is required to disfavor an interpretation of a statute that renders language superfluous), cert. denied, 121 S. Ct. 1732 (2001); Allen Oil Co. v. Comm'r of Internal Revenue, 614 F.2d 336, 339 (2d Cir. 1980) (stating that "a statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless"); United States v. Blasius, 397 F.2d 203, 207 n.9 (2d Cir. 1968) (noting that "[t]here is a presumption against construing a statute as containing superfluous or meaningless words or giving it a construction that would render it ineffective"), cert. dismissed, 393 U.S. 1008 (1969). If the court were to interpret section 226 to permanently bar the funding of any locally developed public housing units covered by section 519(n), as HUD suggests, then section 519(n) would have absolutely no purpose and would be rendered meaningless by section 226.
 
 
 34
 HUD argues that Congress clearly expressed its intent to make section 226 permanent legislation and thus nullify section 519(n) by including the word "hereafter" in that provision.[2] Despite the presumption that a provision contained in an appropriation act applies only in the applicable fiscal year, see Building & Constr. Trades Dep't, AFL-CIO v. Martin, 961 F.2d 269, 273-74 (D.C. Cir.), cert. denied, 506 U.S. 915 (1992); see also GAO Principles at 2-29, the court acknowledges that use of the term "hereafter" in an appropriation act generally denotes futurity, see, e.g., United States v. Vulte, 233 U.S. 509 (1914); Cella v. United States, 208 F.2d 783, 790 (7th Cir. 1953), cert. denied, 347 U.S. 1016 (1954); Matter of: Permanency of Limitation on Interstate Commerce Commission's Approval of Railroad Branchline Abandonments Contained in 1982 Appropriation Act, 70 Comp. Gen. 351, 353 (1991); see also GAO Principles at 2-29. However, none of the cases cited by HUD for the proposition that inclusion of the word "hereafter" makes an appropriation provision permanent involved facts akin to those we are presented with here, where the two seemingly conflicting provisions are enacted as part of the same legislation. Rather, the cases cited by HUD involve appropriation acts that modify or suspend earlier-enacted laws. Given the unique circumstances of this case, the court is not convinced that the mere presence of the word "hereafter" in section 226 clearly demonstrates Congress's intent to repeal section 519(n). This could be a different case if sections 226 and 519(n) appeared in separate statutes, but that is not the question we consider in the instant appeal.
 
 
 35
 HUD's argument that Congress used the word "hereafter" to make 226 permanent is further called into doubt when we compare sections 226 and 519(n). It is evident from a reading of 519(n) that when Congress wants to make explicit that a certain provision is to apply beyond the fiscal year to which the appropriation act applies, it knows how to do so. Section 519(n)(4) explicitly states that "[t]his subsection shall apply to fiscal year 1999 and each fiscal year thereafter." 112 Stat. at 2560 (codified at 42 U.S.C. § 1437g(n)(4)) (emphasis added). Thus, Congress left no doubt whatsoever that it intended section 519(n) to apply beyond fiscal year 1999. Congress's failure to use such unequivocal language in section 226, when it did so in 519(n), cuts against HUD's argument that Congress intended section 226 to permanently bar implementation of section 519(n). See Rodriguez v. United States, 480 U.S. 522, 525 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotations omitted).
 
 
 36
 In the task of reconciling sections 226 and 519(n), as we must do, if possible--having found no "clear and manifest" intention of Congress to repeal section 519(n)--we observe that this is not a case in which there is a "positive repugnancy" between the two provisions. See, e.g., Tennessee Valley Auth., 437 U.S. at 190; McHugh, 220 F.3d at 58.[3] Rather, the two provisions can be harmonized by interpreting section 226 only to restrict HUD from funding state-assisted public housing units with funds appropriated in the 1999 Appropriations Act. Contrary to HUD's argument, the word "hereafter" in section 226 is not made superfluous by this interpretation. Given that Congress expressly provided that payments to public housing authorities for modernization and operating subsidies were "to remain available until expended," the term "hereafter" serves to make clear that HUD is permanently restricted from allocating any funds appropriated in the 1999 Appropriations Act to the locally developed public housing units, even if funds remain after 1999. See 112 Stat. at 2472. Thus, HUD is not barred from providing assistance to certain state and local public housing units, pursuant to 519(n), with funds appropriated after 1999.
 
 Legislative History
 
 37
 The legislative history of sections 226 and 519(n) supports our interpretation that section 226 was not meant to permanently bar the implementation of 519(n). The Conference Report on the 1999 Veterans Affairs and HUD Appropriations Act, H.R. 4194, contained both sections 226 and 519(n). See H.R. Conf. Rep. No. 105-769, 144 Cong. Rec. H9359- 9417 (daily ed. Oct. 5, 1998). The conference report is generally the most reliable evidence in legislative history of congressional intent because it represents the final statement of the terms agreed to by both houses. See Disabled in Action of Metro. New York v. Hammons, 202 F.3d 110, 124 (2d Cir. 2000). The conferees were aware that both sections 226 and 519(n) were contained in the bill, as evidenced by the explanation of section 226 provided in the Joint Explanatory Statement of the Committee on Conference. The conferees explained that:
 
 
 38
 [The Conference Report] [i]nserts language, as an administrative provision, prohibiting funds from being used to support any units not funded prior to October 1, 1998, except for those funded under the HOPE VI program. Appropriated amounts for the Capital Fund and the Operating Fund are predicated on the current number of public housing units. Adding thousands of units of formerly state or locally subsidized housing, as included in Title V, would cause a significant hardship to existing developments by decreasing available funds. This prohibition applies to both the Public Housing Capital and Operating Funds.
 
 
 39
 H.R. Conf. Rep. No. 105-769, 144 Cong. Rec. at H9419.
 
 
 40
 This explanatory language suggests that Congress was specifically mindful of the harmful effect of section 519(n) on the "existing" public housing developments due to the fact that the funds in the Capital Fund and Operating Fund were appropriated based on the "current" number of public housing units. In other words, by federalizing certain state and local public housing units, section 519(n) increased the number of public housing units that would draw on available monies in the two funds. The explanatory statement indicates that Congress was concerned that adding these state and local public housing units would work a "significant hardship" on the existing public housing units. However, the concerns that motivated inclusion of section 226 in the 1999 Appropriations Act would not seem to apply in future fiscal years, when the amounts appropriated for the Capital Fund and Operating Fund could account for the existence of the additional public housing units. Moreover, if Congress inserted section 226 to permanently nullify 519(n), Congress could have made its intention explicit in the explanatory statement. Cf. Republic Airlines, Inc. v. United States Dep't of Transp., 849 F.2d 1315, 1318 (10th Cir. 1988) (committee reports consistently stated that the appropriations legislation "terminates the section 406 program").[4]
 
 
 41
 The Conference Report, which included both sections 226 and 519(n), was agreed to by the conferees from both chambers and the same version of the bill was presented to and passed by the House and the Senate on October 6 and 8, 1998, respectively, and signed by the President on October 21, 1998. See 144 Cong. Rec. H9597-9625 (daily ed. Oct. 6, 1998) (House agrees to Conference Report by a vote of 409 to 14); 144 Cong. Rec. S11833-11847 (daily ed. Oct. 8, 1998) (Senate agrees to the Conference Report by a vote of 96 to 1); 34 Weekly Comp. Pres. Doc. 2086-87 (Oct. 21, 1998).
 
 
 42
 HUD argues that a colloquy between New York Senator Alfonse D'Amato, Chairman of the Senate Authorizing Committee with jurisdiction over QHWRA, and Senator Christopher Bond, Chairman of the Appropriations Sub-Committee with jurisdiction over HUD and the sponsor of section 226, during the floor debate in the Senate concerning the 1999 Appropriations Act on October 8, 1998, supports its position that section 226 was meant to be permanent. Senator D'Amato initiated the colloquy to clarify that contractual arrangements that already existed between the New York City Housing Authority and HUD would be protected despite the prohibition in section 226. See 144 Cong. Rec. at S11840-41 (daily ed. Oct. 8, 1998). Senator D'Amato stated: "While the FY 1999 VA-HUD Appropriations Act will not allocate any additional funds for these local units, the Act does include a specific statutory protection for units which were assisted prior to October 1, 1998. Thus, the current contractual relationship between NYCHA and HUD would be fully protected and maintained. I would ask the distinguished Chairman of the VA-HUD Subcommittee if my explanation is consistent with the intent of the conferees?" Id. at S11841. Senator Bond concurred with the statement made by Senator D'Amato. Id. Senator Bond further stated: "The conferees were mindful of the existing situation in New York City and have fully protected existing practice in the VA-HUD Appropriations Conference Report. No provision of the Act is intended in any way to interfere with or abrogate existing contracts for the use of assistance in New York City." Id.
 
 
 43
 HUD contends that Senator D'Amato would not have expressed concern regarding section 226 if the provision only applied to 1999 funds. This argument lacks merit. That the prohibition only applies to 1999 funds is no reason for a Senator, especially one from an affected state, not to express concern. Moreover, Senator D'Amato's comments were limited to the "FY 1999 VA-HUD Appropriations Act" and the fact that the act would not allocate any additional funds for the locally developed housing units. No statement made by Senator D'Amato or Senator Bond during the colloquy can be interpreted to mean that they believed section 226 was permanent. HUD's argument that section 226 was a permanent prohibition is further belied by the fact that Congressman Lazio, the principal sponsor of QHWRA and a Congressman from the affected state, did not discuss section 226 at all during the floor debate in the House. See 144 Cong. Rec. at H9613-16 (daily ed. Oct. 6, 1998). Accepting HUD's logic, the fact that Congressman Lazio did not mention section 226 during the floor debate is evidence of his understanding that section 226 applied only to funds appropriated in fiscal year 1999 and did not permanently nullify section 519(n).[5]
 
 Conclusion
 
 44
 This Court's responsibility is to remain faithful to Congress's words expressed in the whole statutory scheme. We are thus without license to nullify unilaterally statutory language. If Congress wishes to repeal a section of a statute, it has the means to do so. Because we find no "clear and manifest" indication that Congress intended section 226 to repeal section 519(n), it is our duty to harmonize the provisions, if possible. The doctrine against repeals by implication is especially strong in this case, where the two provisions were enacted on the same day as part of the same statute. We conclude that sections 226 and 519(n) can co-exist by interpreting section 226 only to prohibit HUD from implementing section 519(n) with funds appropriated in the 1999 Appropriations Act. Thus, we hold that section 226 does not permanently bar HUD from implementing section 519(n) and that the HUD Secretary must comply with section 519(n). The decision of the district court is affirmed.
 
 
 
 NOTES:
 
 
 *
 The Honorable David N. Hurd, United States District Judge for the Northern District of New York, sitting by designation.
 
 
 [2]
 HUD concedes that the phrase "this Act or any other Act" in section 226 does not on its own make the provision permanent. In fact, the phrase "this Act or any other Act" has been interpreted merely to refer to any other appropriation act for the same fiscal year. See Matter of: Permanency of Weapon Testing Moratorium Contained in Fiscal Year 1986 Appropriations Act, 65 Comp. Gen. 588, 589 (1986); see also GAO Principles at 2-30.
 
 
 [3]
 We are aware of only one case, a Comptroller of the Treasury decision, in which two provisions in same statute were found irreconcilable. See Restriction on Use of Appropriations for Purchase of Real Estate, 26 Comp. Dec. 534 (1920); see also GAO Principles at 2-52 (discussing case). In that case, an Army appropriation act authorized the acquisition of land in the District of Columbia for the location of the Army Medical Museum. 26 Comp. Dec. at 534. However, the same act contained a provision prohibiting the use of any appropriation in the act for the purchase of real estate. See id. In a very short decision, the Comptroller concluded that the appropriation for the purchase of real estate for the Army Medical Museum was not available due to the general prohibitory clause in the act. See id. Unlike the two provisions at issue in the Army appropriations act, sections 226 and 519(n) of the 1999 Appropriations Act may be reconciled to give both provisions meaning and to avoid a repeal by implication.
 
 
 [4]
 HUD concedes that, contrary to its earlier argument, committee jurisdiction did not prevent the conferees from modifying QHWRA, noting that the House passed a resolution preventing a point of order from being raised against the conferees acting outside their jurisdiction. See 144 Cong. Rec. at H9597 (daily ed. Oct. 6, 1998). Instead, HUD now argues that the conferees inserted section 226 rather than modifying or deleting section 519(n) because all the conferees were appropriations committee members and "were experienced in drafting appropriations legislation - not authorizing legislation." This argument is unpersuasive, as conferees had substantial experience drafting legislation on both authorizing and appropriations committees. See 1998/Fall Congressional Staff Directory (Joel D. Treese ed., 53rd ed. 1998). Moreover, as the Housing Authorities point out, over the last several years Congress has enacted substantial authorizing legislation as part of HUD's annual appropriations acts. Thus, members of HUD's appropriations bodies are in fact familiar with authorizing legislation.
 
 
 [5]
 HUD argues that an August 2, 2001 colloquy between Senators Bond and Mikulski, made while the instant appeal was pending, confirms that section 226 was drafted to permanently bar HUD from carrying out section 519(n). During that colloquy, Senator Bond stated that "Congress passed section 226 of the VA/HUD Fiscal Year 1999 Appropriations Act to ensure for fiscal year 1999 and every following fiscal year, that these state- developed low-income housing units remain the responsibility of New York and Massachusetts...." 147 Cong. Rec. S8673 (daily ed. Aug. 2, 2001). Senator Mikulski added that "[t]he legislation is clear on its face that it is a permanent law and permanent prohibition on funding...." Id. However, precedent constrains us from giving weight to such post-enactment statements. See Pittston Coal Group v. Sebben, 488 U.S. 105, 118-19 (1988) (refusing to consider post enactment statements of key sponsor as those statements were not relied upon by legislators who enacted the law); Tennessee Valley Auth., 437 U.S. at 209 (Powell, J., dissenting) ("We have held, properly, that post-enactment statements by individual Members of Congress as to the meaning of a statute are entitled to little or no weight."). This is especially the case with respect to post-enactment statements made in a Congress different from the one in which the legislation was passed.