**PANKOS DINER CORP., K & S Caterers, Inc., Sean & Sean, Inc., Stardust Diners, Inc., Garden City Hotel Inc., Jkg's, Inc., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**NASSAU COUNTY LEGISLATURE, the County of Nassau, a Municipal Corporation, Judith Jacobs, Presiding Officer of the Nassau County Legislature, David M. Ackman, MD, MPH, Commissioner of the Nassau County Department of Health, Defendants.**

No. 03–CV–1203(DRH)(WDW).

United States District Court, E.D. New York.

June 5, 2003.

Ruskin Moscou Faltischek, P.C. by Arthur J. Kremer, Esq., Uniondale, NY, for Plaintiffs.

Lorna B. Goodman, Nassau County Attorney by Jane M. Houdek, Esq., Mineola, NY, for Defendants.

### MEMORANDUM & ORDER

HURLEY, District Judge.

Plaintiffs seek a preliminary injunction to halt the enforcement of Nassau County Local Law No. 15–2002 ("2002 Smoking Law"). For the reasons discussed *infra,* the Court grants the motion.

## I. BACKGROUND.

As this case involves a challenge to the facial viability of a county statute, the relevant background facts are a matter of public record. With that said, the Court calls the following facts from the uncontroverted facts identified by the parties.

On January 8, 1998, Nassau County Local Law No. 7–1997 ("1998 Smoking Law") went into effect. This law, drafted and adopted by the Nassau County legislature, promulgated a new scheme that restricted

or prohibited smoking in various public places, including restaurants, bars, taverns and hotels. In relevant part, the 1998 Smoking Law reads as follows:

Except as otherwise provided in this Law, smoking shall not be permitted and no person shall smoke in the following locations: .... [a] restaurant with an indoor seating capacity of more than 50 patrons, including any seating in the restaurant bar area that is not used exclusively for seating at the bar[,] except that ... [s]moking shall be permitted in a smoking room[;][a] restaurant with an indoor seating capacity of 50 patrons or less, including any seating in the restaurant bar area that is not used exclusively for seating at the bar[,] except that ... [s]moking shall be permitted in designated areas for smoking not to exceed 25% of the seating capacity of such restaurant if such restaurant is served by properly operating and properly maintained filter system that recirculates clean air back into the building atmosphere or by a properly operating and properly maintained ventilation system exhausted to the outside of the building in such a way as to prevent the reintroduction of tainted air into the building atmosphere[; or a] Restaurant Bar Area[,] except that ... [i]f the perimeter of the Restaurant Bar Area is located at least 6 feet from the perimeter of any indoor dining area of such restaurant, smoking shall be permitted in the Restaurant Bar Area if such Bar Area is equipped with a properly operating and properly maintained filter system that recirculates clean air back into the building atmosphere or by a properly operating and properly maintained ventilation system exhausted to the outside of the building in such a way as to prevent the reintroduction of tainted air into the building atmosphere ... [or i]f the perimeter of the Restaurant Bar Area is located less than 6 feet from the perimeter of any indoor dining area of such restaurant, smoking shall be permitted only in a smoking room located in such Restaurant Bar Area.

Plaintiffs' Reply Aff., Ex. A, Section IV(A)(4)-(6). The term Restaurant Bar Area is defined as "a contiguous area of a restaurant containing a counter in which the service and consumption of food in this area is incidental[, i.e., less than 40% of the total annual sales,] to the service and consumption of alcoholic beverages." *Id.* at Section II(F). In addition, 1998 Smoking Law Section IV(D) states: "Smoking restrictions in this Law will not apply to bars or taverns if prominent notice is posted at the doors or entrances that smoking is permitted throughout this facility."

On November 6, 2002, the Nassau County Executive approved the 2002 Smoking Law, which had previously been passed by the Nassau County Legislature. The 2002 Smoking Law sought to amend the 1998 Smoking Law.2002 Smoking Law Section 2, entitled "Amendments." The legislative intent behind the amendments was "to place reasonable limitations on smoking within the County of Nassau while striking a balance between the health needs of all non-smoking individuals, the rights of smokers and the imposition of regulatory burden on business." *Id.*, Section 1, entitled "Legislative Intent," last ¶. It is a short statute, only two pages in length. Section IV, entitled "Regulations of Smoking," is at the heart of the present controversy. That Section reads in pertinent part as follows:

(A)(5)(a) *Effective March 1, 2003, smoking shall be prohibited in all restaurants, including all outdoor dining areas of restaurants.*

(A)(6)(B). Deleted.

(A)(7)(a). *Effective March 1, 2003, smoking shall be prohibited in all enclosed facilities within a place of employment, except within a place of employment that derives at least 90% of its revenue from tobacco retail sales, and a private home which may serve as an office workplace.*

(A)(8)(b). Deleted.

(A)(12) *Added. Effective March 1, 2003, smoking shall be prohibited in all bars and taverns.*

(A)(13) *Added. Effective January 1, 2004, smoking shall be prohibited in bingo halls and all other public indoor places where bingo shall take place.*

Plaintiffs initiated this action on March 11, 2003 by filing the Complaint. In the Complaint, Plaintiffs allege that the amendments promulgated in the 2002 Smoking Law are void because they render the statute unconstitutionally vague, because the amendments fail to comply with the requirements of the New York State Environmental Quality Review Act ("SEQRA"), because "Plaintiffs expended substantial sums on the purchase and installation of ventilation and filtration systems and the construction of 'smoking rooms' in reliance on and in order to comply with the [1998] Smoking Law ...,"" which amounts to a taking in violation of the Fifth and Fourteenth Amendments," and the 2002 Smoking Law "amount[s] to an unauthorized exercise of zoning power by the Nassau County Legislature." Complaint at 2. Based upon these perceived infirmities, Plaintiffs seek injunctive and declaratory relief to prevent the loss of customers to neighboring Suffolk County, which does not currently have a smoking ban in effect.

At the time of filing, Plaintiffs also submitted a contemporaneous motion for a preliminary injunction. On March 14, 2003, the Court signed an Order to Show Cause why a preliminary injunction should not issue. Oral argument was heard on March 20, 2003. However, the Court reserved decision until the parties had submitted further briefing and exhibits. The Court is presently in receipt of all contemplated submissions with regard to the instant motion for a preliminary injunction.

## II. DISCUSSION.

### A. Preliminary Injunction Standard.

■ A party seeking a preliminary injunction "ordinarily must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 172 (2d Cir.2001). However, "where a preliminary injunction is sought against government action taken in the public interest pursuant to a statutory or regulatory scheme, the less demanding 'fair ground for litigation' standard is inapplicable, and therefore a 'likelihood of success' must be shown." *Forest City Daly Housing, Inc. v. Town of North Hempstead,* 175 F.3d 144, 149 (2d Cir.1999). The Court also notes that Plaintiffs seek to enjoin enforcement of and, ultimately, void a statute that was already in effect at the time that the Complaint was filed. A heightened standard requiring a showing of a "clear" or "substantial" showing of likelihood of success applies to preliminary injunctions if "(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Tom Doherty Assocs. v. Saban Ent., Inc.,* 60 F.3d 27, 33–34 (2d Cir.1995).

Since Plaintiffs seek to alter the status quo of a governmental statute, the Court confines its inquiry to the questions of irreparable harm and whether Plaintiffs have demonstrated a "clear" or "substantial" showing of likelihood of success on the merits.

### B. Irreparable Harm.

■ The movant's demonstration of irreparable harm comprises the " 'the single most important prerequisite for the issuance of a preliminary injunction.' " *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983) (quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 2948 at 431 (1st ed.1973)). Due to the importance of this factor, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990). To demonstrate irreparable harm, "[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir.1995) (quotation marks and citation omitted).

Plaintiffs complain that the 2002 Smoking Law has caused the loss of smoking patrons (and their associated revenues) to neighboring Suffolk County, which does not currently have a comparable smoking ban. Facially, this comprises a monetary injury. However, although monetary injuries of the type identified by Plaintiffs are usually not proper grounds for the issuance of a preliminary injunction, the Court may properly find that the threatened injury would be irreparable if, due to some form of immunity, the movant would be unable to collect such a judgment. *See United States v. State of New York*, 708 F.2d 92, 93 (2d Cir.1983) (per curiam) (judgment might be uncollectible because of Eleventh Amendment immunity). Plaintiffs contend that Nassau County enjoys Eleventh Amendment immunity that prevents any later monetary judgment for lost smoking patrons and their associated revenue, citing *D.A.B.E. Inc. v. Toledo–Lucas County Board of Health*, No. 01 CV 7334, 2001 WL 1916730, at *4 (N.D.Ohio July 6, 2001), Katz, J. In the absence of any contrary argument by Defendants, the Court concludes that this argument allows the Court to consider Plaintiffs' claims of monetary injury.

Review of the individual affidavits associated with Plaintiffs "Reply Affidavit," reveals that revenues were twenty to thirty-five percent lower after the purported March 1, 2003, complete smoking ban [1] compared to revenues immediately prior to that date. *See* Wagner Aff. ¶ 4; Harrington Aff. ¶ 5; Mancuso Aff. ¶¶ 7–8; Paleos Aff. ¶ 5; Boyle Aff. ¶ 5. The Court is aware that these affirmations fail to speak to certain relevant collateral details. For example, the affidavits make no mention of the traditional revenue differences, if any, between February and March, irrespective of the effect of the 2002 Smoking Law. Such information would be helpful to determine the amount of the perceived damages that may be directly attributable to

---

**1.** Plaintiffs have apparently operated their establishments in accordance with the position taken by the Commissioner of the Nassau County Department of Health concerning the meaning of the 2002 Smoking Law. Such adherence to the Commissioner's position is an understandable course of action given that the 1998 Smoking Law calls for fines up to $250 a day, with "[e]ach day or part of day on which a violation continues [constituting] a separate violation." 1998 Smoking Law, Section X.

the enforcement of the March 1, 2003, ban contained in the 2002 Smoking Law.

These deficiencies, while certainly rendering the Court's task more difficult, do not invalidate Plaintiffs' proffer. Defendants have provided the Court with no persuasive argument that would cast doubts upon Plaintiffs' asserted lost revenues. Therefore, despite the gaps in the proffered information, the Court concludes that Plaintiffs have presented evidence sufficient to demonstrate irreparable harm for the purpose of a preliminary injunction. With that conclusion in mind, the Court turns to Plaintiffs clear or substantial "likelihood of success on the merits."

### C. Clear or Substantial Likelihood of Success on the Merits.

■ "A statute is unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning and differ as to its application, or if it fails to give a person of ordinary intelligence fair notice of conduct proscribed or required by the regulation, and encourages arbitrary and erratic behavior on the part of officials charged with enforcing the rule." *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (citations omitted). "[A] court must *first* determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *Chatin v. Coombe,* 186 F.3d 82, 87 (2d Cir.1999) (quoting *United States v. Strauss,* 999 F.2d 692, 697 (2d Cir.1993)) (emphasis added). Therefore the Court first considers the text of the statute to ascertain whether an individual possessed of reasonable intelligence could ascertain its meaning.

■ Upon first reading, it is clear that the 2002 Smoking Law does not expressly repeal the 1998 Smoking Law. No portion of the statutory language permits such a conclusion. In fact Defendants concede that point. *See* Defendants' March 18, 2003, Opposition Memorandum at 10 (stating that "the Legislature impliedly repealed the contested portions of the [1998 Smoking Law]"). The Court must, therefore, consider the extent to which the 2002 Smoking Law amended and impliedly repealed the 1998 Smoking Law.

Any effort to understand Section IV of the current law requires reference to the predecessor statute. Section IV of the 1998 Smoking Law states that "[e]xcept as otherwise provided in this law," no one was to smoke in eleven designated locations. Some of those prohibitions were absolute (e.g., Section IV(A)(1) pertaining to smoking "on any means of mass transportation"), but most were subject to exceptions (e.g., Section IV(A)(4)(a) limiting smoking in restaurants with an indoor seating capacity of more than 50 patrons to a separate "smoking room" [2] within the facility).

Following the listing of the eleven locations in which smoking is prohibited—again, subject to certain exceptions—Section IV of the 1998 Smoking Law provides the following exemptions:

. . . . .

C. Smoking restrictions in this Law will not apply to those locations equipped with a properly operating and properly maintained filter system that recirculates clean air back into the building atmosphere or by a properly operating and properly maintained ventilation system exhausted to the outside of the building in such a way as to prevent the reintroduction of tainted air into the

---

**2.** "Smoking room" is defined in Section I(H)   of the 1998 Smoking Law.

building atmosphere when private social functions are being held.

D. Smoking restrictions in this Law will not apply to bars or taverns if prominent notice is posted at the doors or entrances that smoking is permitted throughout the facility.

E. Smoking restrictions in this Law will not apply to tobacco business.

F. Smoking restrictions in this Law will not apply to any location owned or operated by an exempt organization when such location is being used by an exempt organization.

Paragraphs B, C, D, E and F are exemptions from the smoking prohibitions contained in Section IV, paragraph (A), subparagraphs 1 through 11.

Attention is now directed to the 2002 Smoking Law. Reference to Section IV of the new law indicates that none of the four exemptions from the smoking prohibitions set forth in Section IV(A) of the 1998 Smoking Law has been repealed.

Indeed, the subject matter of only one of the exemptions, viz., E (pertaining to smoking in a tobacco business) is mentioned in the 2002 Smoking Law. Section IV(A)(7)(a) of the 1998 Smoking Law prohibited smoking in places of employment except in smoking rooms and cafeterias. The new law provides that "smoking shall be prohibited in all enclosed facilities within a place of employment, except within a place of employment that derives at least 90% of its revenue from tobacco sales...." As noted, Section IV(E) states that the "[s]moking restrictions in this Law do not apply to tobacco businesses."

A reader of average intelligence presumably would understand that exemption E in the 1998 Smoking Law may not reconciled with Section IV(A)(7)(a) of the new law and that the latter trumps the former even though exemption E was not expressly repealed. Such a conclusion would be reasonable because both the current restriction and earlier exemption speak solely of smoking in tobacco businesses.

But the other exemptions, C, D and F, are not mentioned in the 2002 Smoking Law. And unlike exemption E, the subjects of the prohibitions and exemptions are not identical and, accordingly, both provisions may logically coexist. By way of example, consider the following excerpt from the 2002 Smoking Law: "Effective March 1, 2003, smoking shall be prohibited in all restaurants, including all outdoor dining areas of restaurants [and in] ... all bars and taverns ...." 2002 Smoking Law Section IV(A)(5)(a) & (A)(12). Facially, this language indicates that, beginning on March 1, 2003, smoking will not be allowed in any business establishments that serve food or qualify as bars or taverns. However, this prohibition conflicts with the exemptions that apparently persists after the enactment of the 2002 Smoking Law. By way of example, consider the bars and taverns exemption expressed in 1998 Smoking Law Section IV(D) ("Smoking restrictions in this law will not apply to bars or taverns if prominent notice is posted at the doors or entrances that smoking is permitted throughout the facility."). Any person of ordinary intelligence reading both the prohibition and the exemption would be confused and justifiably so. A bar or tavern owner would have no idea if the posting of a prominent sign in accordance with Section IV(D) would place his or her establishment beyond the prohibition articulated in Section IV(A)(12). Similarly, it is unclear, e.g., whether the new prohibitions pertain to "exempt organization[s]," that being exemption F in the 1998 Smoking Law.[3]

3. Parenthetically, the Court notes that the

2002 Smoking Law speaks of several "effec-

In an effort to counter this confusion, Defendants maintain that the language of 2002 Smoking Law Section IV(A)(5)(a) & (A)(12) "impliedly repealed the contested portions of the [1998 Smoking Law]." Defendants' March 18, 2003, Opposition Memorandum at 10. As Plaintiffs point out, " 'repeal or modification of legislation by implication is not favored in the law.' " Plaintiffs' Reply Memorandum at 1 (quoting *Natural Resources Defense Council. Inc. v. New York City Dept. of Sanitation,* 83 N.Y.2d 215, 222, 608 N.Y.S.2d 957, 630 N.E.2d 653 (1994)). Indeed, Second Circuit case law agrees with this statement. *See Auburn Housing Authority v. Martinez,* 277 F.3d 138, 144 (2d Cir.2002) (it is an "important principle that repeals by implication are not favored"). Despite this important starting point, it is equally important to consider that a legislature may repeal a statute by implication where the intent is "clear and manifest." *See Tennessee Valley Authority v. Hill,* 437 U.S. 153, 189, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (stating that "the intention of the legislature to repeal must be 'clear and manifest' ") (quoting *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936)). "Absent an affirmative showing of an intention to repeal, 'the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.' " *Auburn Housing Authority,* 277 F.3d at 144 (quoting *Tennessee Valley Auth.,* 437 U.S. at

190, 98 S.Ct. 2279). The Second Circuit has referred to irreconcilable statutes as those that possess a "positive repugnancy." *McHugh v. Rubin,* 220 F.3d 53, 58 (2d Cir.2000).

There is no manifest intent to repeal the restaurant exemptions contained in the 1998 Smoking Law. Therefore, the Court's analysis concerns the irreconcilability or "positive repugnancy" of the two statutes. In this analysis, " '[t]he courts are not at liberty to pick and choose among [legislative] enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed [legislative] intention to the contrary, to regard each as effective.' " *Traynor v. Turnage,* 485 U.S. 535, 548, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) (quoting *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)).

As noted, the exemptions are not irreconcilable with the Section IV(A) provisions in the 2002 Smoking Law prohibiting smoking in bars, taverns and restaurants as of March 1, 2003. Paragraph A of Section VI speaks of prohibitions, whereas paragraphs C, D and F address specific exemptions from those prohibitions. Given the absence of "positive repugnancy" between the two, Defendants' repeal by implication argument is unconvincing.

## III   Conclusion

A reading of the 2002 Smoking Law *alone* suggests that a total ban on smoking

---

tive" dates, one being "on the date of filing of the law with the Secretary of State" (Section 3), and another being as of "March 1, 2003." 2002 Smoking Law, Section IV(A)(5)(a) and (A)(12). From that, it could be argued that the Nassau County Legislature intended to enact (1) a modified smoking law (with persisting exceptions) for the period between the filing of the law with the Secretary of State and March 1, 2003, and (2) a total ban on smoking in all restaurants, taverns and bars effective March 1, 2003. So construed, at

least some portions of the 2002 Smoking Law would be less puzzling. However, neither party has suggested that the statute be interpreted in that fashion, nor is there anything in the statute (beyond the several "effective" dates) or in the legislative history to suggest that its drafters intended such a result. And more importantly for present purposes, this possible alternative view of the statute simply adds to the confusion faced by restaurant, bar and tavern owners trying to decipher the conduct proscribed by the 2002 Smoking Law.

in restaurants, taverns and bars was enacted. But that law simply amends the 1998 Smoking Law. Accordingly, both laws must be read together to determine their meaning. That process unfortunately generates confusion. This confusion results primarily, although far from exclusively, because the exemptions, set forth in Section IV(C),(D) and (F), to the prohibitions contained in Section IV(A) (of both the original and current laws) seem to be unaffected by the 2002 Smoking Law.

It may be, as urged by Defendants, that portions of Section IV(A) of the 1998 Smoking Law were repealed by implication via the enactment of the corresponding section in the 2002 Smoking Law. The same may not be convincingly said, however, of exemptions (C), (D) and (F), which remain unaddressed by the 2002 Smoking Law. Which is to say, the hypothetical person of average intelligence—reading the two laws together, as required—is likely to be confused as to the proscribed conduct.

For the reasons indicated, the Court finds that Plaintiffs have demonstrated a clear and substantial likelihood of success on the merits under their void-for-vagueness cause of action,[4] supplemented by a showing of irreparable harm. Accordingly, the following preliminary injunction is issued pursuant to Federal Rule of Civil Procedure 65:

ORDERED, that defendants, their officers, employees, agents, servants, attorneys and assigns, and all persons acting in concert therewith, and any of them, and all persons who have or shall receive actual notice of this order, are hereby enjoined and restrained from enforcing the provisions of Local Law No. 15–2002 of the Miscellaneous Laws of Nassau County.

However, this ORDER shall not go into effect until Plaintiffs file a bond with the Clerk of Court in the sum of $75,000. *Id.* Rule 65(c).

SO ORDERED.

---

4. Given that Plaintiffs have prevailed, in the limited context of a preliminary injunction, under their void-for-vagueness argument, their alternate grounds for the relief granted will not be addressed.